# Exhibit A



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Sharon Brooks - MS 08-A<br>The Travelers Companies, Inc.<br>One Tower Square<br>Rm 8MS<br>Hartford, CT 06183 |

| | |
|---|---|
| **Entity:** | The Travelers Indemnity Company<br>Entity ID Number  2317465 |
| **Entity Served:** | Travelers Insurance Company |
| **Title of Action:** | Ceres Enterprises, LLC vs. Travelers Insurance Company |
| **Matter Name/ID:** | Ceres Enterprises, LLC vs. Travelers Insurance Company (10420154) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cuyahoga County Court of Common Pleas, OH |
| **Case/Reference No:** | CV20935219 |
| **Jurisdiction Served:** | Connecticut |
| **Date Served on CSC:** | 08/05/2020 |
| **Answer or Appearance Due:** | 28 Days |
| **Originally Served On:** | Travelers on 08/05/2020 |
| **How Served:** | Client Direct |
| Sender Information: | Thomas J. Connick<br>216-364-0512 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**SUMMONS IN A CIVIL ACTION**   **COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20935219 | D1 CM | 42200174 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

CERES ENTERPRISES, LLC                **PLAINTIFF**
                    VS
TRAVELERS INSURANCE COMPANY           **DEFENDANT**

# SUMMONS

TRAVELERS INSURANCE COMPANY
485 LEXINGTON AVENUE
NEW YORK NY 10017

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



**Plaintiff's Attorney**

THOMAS J CONNICK
25550 CHAGRIN BLVD SUITE 101

BEACHWOOD, OH 44122-0000

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

ASHLEY KILBANE
Do not contact judge. Judge's name is given for attorney's reference only.

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT |
|---|
| Jul 27, 2020 |

By_____
                    Deputy

COMPLAINT FILED   07/27/2020



CORPORATE LITIGATION
HARTFORD

AUG 0 5 2020

RECEIVED AM

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**July 27, 2020 09:19**

By: THOMAS J. CONNICK 0070527

Confirmation Nbr. 2038348

CERES ENTERPRISES, LLC

CV 20 935219

vs.

**Judge: ASHLEY KILBANE**

TRAVELERS INSURANCE COMPANY

Pages Filed: 22

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **CERES ENTERPRISES, LLC** | ) **CASE NO.** |
| 835 Sharon Dr. | ) |
| Westlake, OH 44145 | ) **JUDGE:** |
| On behalf of itself and all those similarly | ) |
| situated businesses and entities | ) **PLAINTIFF'S CLASS ACTION** |
| | ) **COMPLAINT** |
| **Plaintiff** | ) |
| | ) ***Jury Demand Endorsed Hereon*** |
| -vs- | ) |
| | ) |
| **TRAVELERS INSURANCE** | ) |
| **COMPANY** | ) |
| 485 Lexington Avenue | ) |
| New York, NY 10017 | ) |
| | ) |
| **Defendant** | ) |

## CLASS ACTION COMPLAINT

Now comes Plaintiff, CERES, LLC ("CERES" or "Plaintiff"), by and through its undersigned counsel, on behalf of the other Members of the below well-defined nationwide and Ohio Sub-Classes, bring this Class Action against Defendant Travelers Insurance Company ("Travelers" or "Defendant"), and as grounds therefore alleges as follows:

## THE PARTIES

1.    CERES is an Ohio limited liability company organized under Ohio law with its principal place of business located at 835 Sharon Drive, Westlake, Ohio 44145. CERES owns and operates the following hotels with Business Income and Extra Expense coverage under Travelers' Package Policy No. 630-2503R415-TIA-19 at all relevant times herein: Residence Inn of Troy, Ohio; Fairfield Inn of Troy, Ohio; Hilton Garden Inn of Cleveland, Ohio; Cambria Suites of Noblesville, Indiana; Cambria Hotel of Avon, Ohio; Cambria Hotel of Bloomington, Minneapolis; and Cambria Hotel of Westfield, Indiana.

2. Travelers is a Montana Company organized under Montana law, and is a property and casualty insurer, with its principal place of business in New York City, New York, and sells insurance in Ohio and throughout the country. It is an insurance company authorized to do business in the State of Ohio and elsewhere.

## JURISDICTION AND VENUE

3. This Honorable Court has jurisdiction over the parties and this dispute, including for declaratory relief, pursuant to Ohio Revised Code § 2307.382, *et seq.*, Ohio Revised Code § 2721.02, *et seq.* and Rule 57 of the Ohio Rules of Civil Procedure.

4. An actual controversy between CERES and Travelers exists within the meaning of Ohio Revised Code § 2721.02, *et seq.* regarding whether Travelers has a duty to provide CERES coverage and indemnity for, among other things, business income loss pursuant to the terms and conditions of the Travelers Policy of insurance, due to the COVID-19 pandemic, as more particularly described below.

5. The Ohio General Assembly specifically provided in Ohio Revised Code §2721.14 that *"Sections 2721.01 to 2721.15, inclusive, of the Revised Code shall be so interpreted and construed as to effectuate their general purpose to make the law of this state uniform with the law of those states which enact similar sections \*\*\*."*

6. Venue is proper in Cuyahoga County, Ohio under Ohio Rules of Civil Procedure 3(C)(3), 3(C)(6), and 3(F), and Ohio Revised Code § 2721.14 because Defendant conducted activity giving rise to Plaintiff's Claims for relief in Cuyahoga County, because all or part of Plaintiff's claims for relief arose in Cuyahoga County, and because the declaratory relief requested herein is uniform with the laws of those states that enacted similar provisions, and wherein some Class Members reside.

## FACTUAL BACKGROUND

### *THE INSURANCE CONTRACT*

7.     At all relevant times, Travelers insured CERES under a commercial/business owner Policy covering CERES' Deluxe Business Income (and Extra Expense), bearing blanket Policy Number 630-2503R415-TIA-19 ("Policy"). The certified Policy is in the possession of Travelers, and while not attached hereto because it is voluminous, it is incorporated herein by reference.

8.     Under the Policy, Plaintiff agreed to make premium payments to Travelers in exchange for Travelers' promise to indemnify Plaintiff for losses including, but not limited to, business income loss at its commercial property locations ("Properties").

9.     The Policy is currently in full effect, providing property, business personal property, business income and extra expense, and additional coverages for the effective period, which includes January 1, 2020 to the present.

10.     Plaintiff faithfully paid Policy premiums to Travelers, specifically to provide additional coverage for "Business Income and Extra Expense Coverage" in the event of business interruption at the Properties resulting from an order by Civil Authority.

11.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Properties is specifically prohibited by order of Civil Authority as the direct result of a covered loss to property in the immediate area of the Properties. The covered physical loss includes, without limitation, loss of use and/or loss of utilization of the properties.

12.     COVID-19's actual or suspected physical presence at or in the vicinity of the Properties prevents Plaintiff from making full use of the Property, including, without limitation,

the inability to fully rent its hotel, book catering events and serve restaurant customers.[1] Under the terms and conditions of the Policy, this kind of loss constitutes a physical loss to the Property in that there has been a loss of use and/or utilization of the Property. Moreover, the COVID-19 virus is a "physical" thing, not an abstract fear. For example, hotel and banquet facility business owners such as Plaintiff, forced to terminate services and/or to underutilize their properties due to COVID-19, suffer a "physical loss" regarding use of their properties, with resulting business interruption loss.

13.     Under the terms and conditions of the subject Policy, Physical Loss does not mean and/or require tangible "physical damage."

14.     The Policy is an "all-risk" policy, in so far as it provides that a covered cause of loss under the Policy means direct physical loss of or damage to the property unless the loss is specifically excluded or limited in the Policy. Here, Plaintiff's operations have been suspended, suffered a loss of use, and/or access to its Properties were significantly suspended. No specific exclusion applies to reasonably justify the denial of Plaintiff's claims.

15.     Based upon information and belief, Travelers has accepted the Policy premiums with no intention of providing any coverage under the Policy Business Income, Extra-Expense or Civil Authority Coverage Sections due to a loss and/or shutdown from a pandemic, i.e. the COVID-19 pandemic.

16.     Defendant has, in fact, denied Plaintiff's claims by way of a telephone call and follow-up email in May, 2020.

---

[1] Plaintiff's hotels maintain restaurant facilities that were completely shut down by order of civil authority.

## *THE COVID-19 PANDEMIC*

17.    The global COVID-19 pandemic has physically impacted both public and private property and physical spaces around the world, as well as the right of the general public to gather and utilize retail business locations. The currently raging pandemic has been exacerbated by the fact that the deadly COVID-19 physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight days. The scientific community in the United States and indeed, across the world, including the World Health Organization ("WHO"), has recognized that COVID-19 is a cause of real physical loss and damage.

18.    Indeed, a number of countries such as: China, Italy, France, and Spain have required the fumigation of public areas prior to allowing them to re-open. A recent scientific study printed in the New England Journal of Medicine explains that the virus is detectable for up to three hours in aerosols, up to four hours on copper, up to 24 hours on cardboard boxes, and up to three days on plastic and stainless steel[2]. Notably, the most potent form of the virus is not airborne but rather present on physical surfaces.

19.    While the Policy was in force, CERES sustained a loss due to coronavirus, also referred to as "COVID-19", and the Civil Authority orders issued by the Governor of Ohio that have addressed the state and nationwide spread of the coronavirus, i.e. pandemic.

20.    In late 2019 and early 2020, an outbreak of respiratory illness caused by a novel COVID-19 started to infect humans across the globe. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic (i.e. a global outbreak of disease).

---

[2] See Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1, New England Journal of Medicine (March 17, 2020), available at https://www.nejm.org/doi/pdf/10.1056/NEJMc 2004973?articleTools=true.

21. On January 31, 2020, under §319 of the Public Health Service Act (42 U.S.C.247d), The Secretary of Health and Human Services ("HHS") declared a public health emergency in response to COVID-19.

22. On March 11, 2020, the WHO announced that COVID-19 outbreak represented a pandemic.

23. On March 13, 2020 the President of the United States of America, Donald J. Trump, issued the Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("Proclamation"), proclaiming the COVID-19 outbreak constituted a national emergency in the United States, beginning March 1, 2020.

24. Various states, including the State of Ohio have issued and implemented mandatory Stay-At-Home Orders,.[3] Requiring businesses, such as Plaintiff, to shut down and/or significantly suspend business operations, thus causing Plaintiff a loss of use of its Properties, and resulting in substantial loss of business income.

25. On March 29, 2020 President Donald J. Trump announced the extension of his Administration's social distancing guidelines until April 30, 2020.

26. Effective March 23rd, 2020, Ohio Civil Authority ordered Ohio residents to stay at home and ordered all non-essential businesses in Ohio to cease all activities. This order was extended to May 29, 2020.

27. Coronavirus and the pandemic cause direct physical loss and property damages. COVID-19 and the Pandemic are physically impacting public and private property in Ohio and throughout the country. The executive orders issued by the Governor of Ohio, and the majority of

---

[3] Upon information and belief, most states, including Ohio, are still currently under some form of mandatory stay-at-home orders.

other State Governors, in response to the pandemic have caused direct physical loss of Plaintiff's and Class Members' properties.

28. COVID-19 has devastated the hotel industry.

29. Hotel occupancy in the United states is expected to drop by at least 59%.[4]

30. The hotel industry is expected to experience a 50% decline in revenue, with an 2020 occupancy rate forecasted to be worse than in 1933, during the Great Depression.[5]

31. For example:



32. After CERES lost several hotel guest reservations due to order of the State of Ohio and Cuyahoga County (and other counties), CERES made a claim with Travelers under the Policy

---

[4] https://www.statista.com/statistics/1109521/hotel-occupancy-coronavirus/
[5] https://www.hotelmanagement.net/own/studies-break-down-covid-19-s-impact-hotels-travel-plans

commercial/business income coverage. Travelers acknowledged the claim but summarily denied it in May, 2020.

33. Upon information and belief, Travelers has denied similar claims regarding the COVID-19 Pandemic and will continue to do so unless enjoined by this Honorable Court.

34. Based on the prevalence of the virus in Cuyahoga County and throughout Ohio, it is probable that CERES sustained direct physical loss of or damage to its properties due to the presence of coronavirus, and has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio.

35. Any effort by Travelers to deny the reality that the Coronavirus causes physical loss of or damage to property would constitute a false and potentially fraudulent misrepresentation that could endanger Policy holders, such as Plaintiff, and the public.

36. Insurers, including Travelers, also had actual and express knowledge of specific coverage forms that specifically exclude losses related to pandemics and/or SARS, but Travelers failed to use those coverage forms, and Plaintiff did not contract for those coverage forms, regarding coverage under the subject Policy.

37. In this case, under the coverage forms at issue, Travelers based its denial on exclusions that are not applicable to a pandemic, which is a covered loss under the subject Policy.

38. Had Travelers intended to exclude claims for the COVID-19 pandemic made under the subject Policy, it would have, and could have, included the express exclusionary language used in the past to deny claims, which specifically included the term "pandemic" and "SARS," but Travelers failed to do so related to the Plaintiff herein and Class Members.

39.     Travelers knowingly, purposely, and intentionally used inapplicable exclusions to deny claims for Business Interruption, Extra Expense and Civil Authority claims related to the COVID-19 pandemic.

40.     Travelers had at its disposal contractual language that specifically excluded pandemics and SARS but did not include those Policy exclusions in the subject Policy, yet wrongfully denied claims for those very reasons. Moreover, the exclusions relied upon by Travelers in its denial letter are inapplicable to claims for Business Income Loss, Extra Expense and/or Civil Authority coverage.

41.     Travelers has actual knowledge of the different meanings between pandemic, SARS, Virus, Bacteria and Contamination, by way of the insurance industry using those terms in previous cases and Policy utilizing those different terms, and wrongfully and intentionally used the terms "virus" and "bacteria," among others, to exclude Plaintiff's and Class Members' claims when, in fact, Plaintiff and Class Members' claims are, as admitted by Travelers, related to a pandemic – which is not expressly excluded in the subject Policy.

42.     Alternatively, the terms and conditions of coverage and exclusionary language relied upon by Travelers to deny Plaintiff and Class Members coverage under the Policy related to the COVID-19 pandemic are ambiguous and, therefore, must be construed strictly against Travelers and in favor of Plaintiff and the Class Members.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

44.     *Class Definition(s)*: In accordance with Ohio Civ. R. Proc. 23, Plaintiff bring this action individually and on behalf of similarly situated persons and entities. In this action Plaintiff

seek certification of (1) a nationwide Declaratory Relief Class pursuant to Ohio Civ. R. Proc. 23(b)(2), (2) a nationwide Restitution/Monetary Relief Sub-Class pursuant to Ohio Civ. R. Proc. 23(b)(3), and (3) an Ohio State Sub-Class for Insurance Bad Faith pursuant to Ohio Civ. R. Proc. 23(b)(3) and 23(c)(5). This Class and these Sub-Classes are defined as follows[6]:

      a. ***Declaratory Relief Class (Count I)***: All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, banquet/catering event facility operations and restaurant services throughout the United States who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policy issued by Travelers and denied Business Income loss, Extra Expense and/or Civil Authority coverage due to COVID-19; and

      b. ***Restitution/Monetary Relief Sub-Class (Counts I, II)***: All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, and banquet/catering event facility operations and management throughout the United States who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policy issued by Travelers and denied Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19; and;

      c. ***Ohio State Bad Faith Sub-Class (Counts I, II and III)***: All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, and banquet/catering event facility operations and management

---

[6] Alternatively, Plaintiff seeks class certification pursuant to Ohio Civ. R. Proc. 23(c)(4) for each Class.

throughout the State of Ohio who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policy issued by Travelers and denied, in bad faith, Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

45.     Excluded from the Class are Travelers's employees, officers, directors, legal representatives, successors, and assigns; any entity in which Travelers has a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class. Plaintiff reserves the right to modify the Class Definition(s) throughout the course of this litigation to conform with the evidence and facts as they develop.

46.     This action has been brought as a class action, and may properly be maintained, pursuant to Ohio Civ. R. Proc. 23(b)(1), (2) and (3) of the Ohio Rules of Civil Procedure and case law thereunder and, alternatively, pursuant to Ohio Civ. R. Proc. 23(c)(4).

47.     ***Numerosity***: Plaintiff do not know the exact number of the Members of the Class(es) because such information is in the exclusive control of Defendant. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed throughout the United States of America, and State of Ohio, so that joinder of all Class Members is impracticable.

48.     ***Typicality***:     The Plaintiff's claims are typical of the Class Members' claims. Like other Class Members, Plaintiff is an insured of Travelers who purchased Policy of Insurance and sought coverage and indemnification thereunder for Business Income loss, Extra Expense and Civil Authority coverage due to the COVID-19 pandemic, and was denied the requested coverage

by Travelers under the same, or substantially same, coverage forms.

49. *__Adequacy__*: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff's interests are aligned with the Class Members that Plaintiff seeks to represent, and Plaintiff has retained counsel experienced in complex class action litigation and insurance law, and who has previously been appointed lead and/or co-lead class action counsel in several previous class action matters. Plaintiff does not have any conflicts of interest with any Class Members that would impair or impede its ability to represent such Class Members fully and adequately.

50. *__Commonality__*: Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including but not limited to:

       a. Whether Travelers has systematically and systemically refused and/or failed to find coverage and indemnity for Business Income loss, Extra Expense, and Civil Authority due to the COVID-19 pandemic;

       b. Whether Travelers has systematically and systemically denied coverage and indemnity for Business Income loss, Extra Expense, and Civil Authority due to the COVID-19 pandemic;

       c. Whether Travelers used inapplicable exclusions to deny coverage;

       d. Whether the pandemic resulted in a physical loss under the Travelers Policy;

       e. Whether the COVID-19 pandemic is a covered cause of loss under the subject Policy;

       f. Whether loss of use and/or utilization of Plaintiff's and Class Members' businesses is a direct physical loss under the Travelers Policy;

       g. Whether the relevant terms and conditions of the Travelers Policy are ambiguous;

h. Whether Class Members are entitled to declaratory and/or injunctive relief requiring Travelers to honor claims for Business Income loss, Extra Expense, and Civil Authority due to the COVID-19 pandemic in an amount determined by the Policy limits of liability for future claims;

i. Whether Travelers breached its contract with Plaintiff and the Class Members;

j. Whether Travelers breached the implied duty of good faith and fair dealing, thus damaging Plaintiff and Class Members;

k. Whether, and to what extent, the conduct of Travelers caused injury to Plaintiff and Members of the Class, and, if so, the appropriate measure of damages.

l. Whether Plaintiff and Class Members are entitled to injunctive and/or equitable relief as a result of Defendants' wrongful conduct;

m. The proper form of equitable and injunctive relief;

n. Whether Travelers acted an engaged in bad faith as to the Ohio Sub-Class Members.

51.     ***Risk of Inconsistent or Varying Adjudications***.

Certification pursuant to Ohio Civ. R. Proc. 23(b)(2), (b)(3), and/or 23(c)(4) is proper for the Classes defined above because the maintenance of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to interpretations of uniform Policy terms and obligations that would establish incompatible standards of conduct for the Defendant as the party opposing the class Furthermore, certification under Ohio Civ. R. Proc. 23(b)(2), (b)(3) and/or 23(c)(4) is proper because adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members not a party to the adjudication or would substantially impair or impede their

abilities to protect their interests. In addition, the Defendant, as the party opposing the Classes, has acted, or refused to act on grounds generally applicable to the Classes, thereby making relief appropriate with respect to the Class as a whole

52. **_Superiority and Predominance For The Restitution/Monetary Relief Sub-Class_**.

While Plaintiff specifically states that certification pursuant to Ohio Civ. R. Proc. 23(b)(2) is proper by itself for this entire action because monetary damages in the form of restitution is merely incidental to the declaratory and injunctive relief sought, Plaintiff alternatively alleges that certification of the Restitution/Monetary Relief Sub-Class and the Ohio State Sub-Class defined above is likewise proper under Ohio R Civ P. 23(b)(3). Specifically, common issues of fact and law as set forth above predominate over any individual issues that may exist. Furthermore, a Class Action is superior to other available methods for a fair and efficient adjudication of this controversy because joinder of all members of the class is impractical, and adjudication of this action as a Class is properly manageable, The interests of judicial economy favor adjudication of the claims alleged herein on a Class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

53. Further, and in the alternative, Ohio. R. Civ. Proc. 23(c)(4) permits an action to be maintained as a class action with respect to only particular issues, and the common questions of law and fact set forth above raise issues which are appropriate for class treatment pursuant to Ohio. R. Civ. Proc. 23(c)(4).

## COUNT ONE
### _DECLARATORY JUDGMENT_

54.     Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

55.     There is a genuine dispute and actual controversy, over which this Honorable Court has jurisdiction, between CERES, the Class Members, and Travelers concerning their respective rights, duties and obligations for which Plaintiff and the Class Members desire a declaration of rights and obligations under Travelers's Policy. Pursuant to Ohio's Declaratory Judgment statute and all other uniform state declaratory judgment statutes and laws in which Plaintiff and Class Members reside, this Honorable Court may declare the rights, obligations and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

56.     Since there is a dispute about whether or not CERES and the Class Members have coverage under Travelers's Policy for the loss sustained and to be incurred in the future, CERES and the Class Members are entitled to declaratory relief from this Honorable Court pursuant to Ohio Civil Rule 57 and R.C. §2721.01 to 2721.15, and the uniform state declaratory judgment statutes and laws in which the Class Members reside.

57.     CERES and the Class Members are entitled to a declaration including, but not limited to, that:

> a.   CERES and the Class Members sustained direct physical loss of or damage as a result of the coronavirus pandemic;
>
> b.   Physical loss under the Policy does not require tangible physical damage;

c. Loss of use and/or utilization of Plaintiff's and Class Members' properties constitutes a direct physical loss under the Travelers Policy;

d. COVID-19 is a covered cause of loss under the Policy;

e. The losses incurred by CERES and the Class Members as a result of the executive orders issued by the Governor of Ohio and the Governors of the States wherein the Class Members reside are covered losses under the Policy;

f. The prohibition (and/or significant limitation) of access to Property as Ordered by the Civil Authority Orders, constitutes a prohibition to the insureds' Property(s);

g. The Civil Authority Orders triggers coverage because the Policy does not include an exclusion for a viral pandemic;

h. The Policy provides coverage to Plaintiff and Class Members for any current and future civil authority closures of commercial buildings due to physical loss of or damage to property from COVID-19 under the Civil Authority coverage parameters and the Policy provides business income coverage in the event COVID-19 has caused a loss or damage at the insureds' Property or immediate area of the insureds' Property;

i. The Civil Authority Orders constitute a prohibition of access to the insureds' properties by a Civil Authority as defined in the Policy;

j. Travelers has not and cannot prove the application of any exclusion or limitation;

k. CERES and the Class Members are entitled to coverage for their Business Income loss and Extra Expense resulting from coronavirus;

l. CERES and the Class Members are entitled to coverage for loss due to the actions of Ohio's civil authorities, and the civil authorities wherein the Class Members reside;

m. CERES and the Class Members have coverage for any substantially similar civil authority order in the future that limits or restricts the public's access to CERES' and Class Members' business establishments and

n. Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

58. Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

## COUNT II
### *BREACH OF CONTRACT*

59. Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

60. Plaintiff and Class Members, and Travelers, entered into a valid and enforceable insurance contract.

61. Plaintiff and Class Members gave valuable consideration in the form of premium payments in exchange for the promise of insurance coverage in the event of, among other things, loss of business income.

62. Travelers had an affirmative duty to comply with terms and conditions of the Policy and find coverage wherever possible under the Policy and indemnify Plaintiff and the Class Members for their losses sustained and recoverable under the terms and conditions of the Policy.

63.     Plaintiff and Class Members made a claim for loss of Business Income, Extra-Expense and Civil Authority arising from the pandemic, interruption by civil authority and prohibited ingress and loss of use and/or utilization of Plaintiff's and Class Members' properties.

64.     Travelers breached the insurance contract by denying coverage for Plaintiff's and Class Members' loss, which was due to a covered and foreseeable peril not subject to any exclusion.

65.     Plaintiff and Class Members complied with all of their obligations under the insurance contracts.

66.     Travelers has also affirmatively waived any of its defenses to coverage sought by Plaintiff and Class Members by failing to issue and/or assert in a timely matter, or at all, any reservation of rights.

67.     Plaintiff and Class Members have been injured and suffered financial harm as a result of Travelers's breach of the insurance contract.

68.     In addition, in breaching the contract, Travelers has violated its implied duty to act in good faith and fair dealing with Plaintiff and the Class Members.

69.     As a direct and proximate result of Travelers's breach of contract, Plaintiff and the Class Members have incurred substantial and ongoing monetary damages in excess of $25,000.00.

## COUNT III
### *BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)*

70.     Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

71.     Ohio law recognizes the independent tort of bad faith in the context of the insured/insurer relationship.

72.     Travelers's conduct has breached the implied covenant of good faith and fair dealing implicit to the Policy of insurance.

73.     Ohio law provides that an insurer's lack of good faith is equivalent to bad faith.

74.     Plaintiff and the Ohio Bad Faith Sub-Class Members are all insureds of Travelers in the State of Ohio.

75.     Travelers failed and refused to make an adequate investigation or any investigation regarding Plaintiff's and Sub-Class Members' claims which, among other things, has caused a severe delay in full indemnification of Plaintiff's and Sub-Class Members' claims, and providing all benefits that Plaintiff and Sub-Class Members are entitled to under the Policy(s), which has severely prejudiced and damaged the Plaintiff and Sub-Class Members, and has further resulted in Travelers withholding all recoverable benefits due under the Policy(s).

76.     Travelers has also affirmatively waived any of its defenses to coverage sought by Plaintiff and Class Members by failing to issue and/or assert in a timely manner, or at all, any reservation of rights.

77.     Despite failing to preserve any defenses to coverage via a timely reservation of rights, Travelers has failed to accept coverage and indemnify Plaintiff and Class Members as required under the subject Policy.

78.     Travelers refused and continues to refuse to give any reasonable interpretation to the provisions in the Policy or any reasonable application of such provisions to Plaintiff's and Sub-Class Members' claims and has acted to protect its own financial interests therein at the expense of and detriment to Plaintiff's and Sub-Class Members' rights.

79.     Travelers fails to provide Plaintiff and Sub-Class Members any reasonable or justifiable basis for denying Plaintiff's and Sub-Class Members' claims.

80.     Travelers mispresented the Policy terms and conditions to Plaintiff and the Sub-Class Members including, and without limitation, attempting to use an inapplicable exclusion, i.e. the virus/bacteria exclusion in a knowingly and malicious attempt to avoid paying Plaintiff and the Sub-Class Members all benefits they are entitled to under the Policy.

81.     Travelers, knowing that Plaintiff and Sub-Class Members were incompetent, inexperienced and unable to act to protect their interests, that such benefits were justly due, and that such benefits were necessary to pay Plaintiff and Sub-Class Members necessities of their use of the Premises, nevertheless have deprived Plaintiff and Sub-Class Members of such benefits.

82.     Travelers' refusal to properly investigate, adjust, handle, process and/or pay benefits due Plaintiff and Sub-Class Members compelled Plaintiff and Sub-Class Members to, among other things, engage counsel and to initiate litigation to recover such benefits.

83.     Plaintiff and Sub-Class Members are informed and believe and thereon allege that Travelers intends to and will continue to delay, deny, and withhold, in bad faith, benefits due Plaintiff and Sub-Class Members unless and until compelled to pay such benefits by final judgment of this Honorable Court.

84.     As a direct and proximate result of Travelers's conduct, Plaintiff and Sub-Class Members have sustained substantial compensable losses, including benefits withheld, and economic losses, such as attorney's fees, out of pocket expenses, loss of business income, personal property loss, out-of-pocket costs and expenses, diminution in value of the insurance Policy, and have suffered embarrassment and humiliation and severe mental and emotional distress and discomfort, all to Plaintiff's and Sub-Class Members' detriment and damage in amounts not fully ascertained, but in excess of $25,000, and within the jurisdiction of this Honorable Court.

85.    Further, at all material times and in doing things alleged herein, Travelers acted oppressively, maliciously and with a conscious disregard of Plaintiff's and Sub-Class Members' rights, with the intention of benefitting Travelers financially and with the intention of causing or recklessly disregarding the probability of causing, injury and emotional distress to Plaintiff and Sub-Class Members, Travelers has refused and continues to refuse to pay all benefits due Plaintiff and Sub-Class Members and, further, has unjustifiably and/or intentionally failed to properly investigate, adjust, process, handle and pay Plaintiff's and Sub-Class Members' claims resulting in a significant and unjustifiable delay in resolving Plaintiff's and Sub-Class Members' claims under the terms and conditions of the Policy. In so doing, Travelers did vex, annoy, injure, and harass Plaintiff and Sub-Class Members so as to justify the assessment of punitive and exemplary damages against Travelers.

**WHEREFORE,** Plaintiff respectfully requests of this Honorable Court the following relief, on behalf of themselves and all others similarly situated:

a.    An Order certifying the proposed Declaratory Relief Class herein pursuant to Ohio Civ. R. Proc. 23(B)(2), and appointing Plaintiff and its counsel of record to represent the Declaratory Relief Class;

b.    That the court certify the Declaratory Relief Class as a class action pursuant to Ohio Civ. R. 23(B)(2) as defined above, and, at such time thereafter as the Court deems proper, then certify the Restitution/Monetary Relief Sub-Class and the Ohio State Bad Faith Sub-Class as a class action pursuant to Ohio Civ. R. 23(B)(3) and/or 23(C)(4) as defined above; award the Class Members monetary recovery in excess of $25,000; and appoint Plaintiff and its counsel of record to represent the 23(B)(3) and 23(C)(4) Class(es);

c.    In the alternative, an Order certifying the proposed Classes pursuant to Ohio Civ. R. Proc. 23(C)(4); award the Class Members monetary recovery in excess of $25,000, and appoint Plaintiff and its counsel of record to represent the 23(C)(4)Class;

d.    Pre-judgment and post-judgment interest;

e.    Punitive damages, costs, and attorney fees where applicable and in the event the Ohio State Bad Faith Sub-Class is certified as a Class Action;

f.     Plaintiff's costs of suit, including, without limitation, its attorney's fees, expert fees, and actual incurred and costs; and

g.     Such other further relief, at law or as the Court deems just and proper.

## JURY DEMAND

Pursuant to Ohio Civil Rule 38, Plaintiff requests a jury trial of all issues alleged herein.

Respectfully submitted,

*/s/ Thomas J. Connick*
Thomas J. Connick (0070527)
**CONNICK LAW, LLC**
25550 Chagrin Blvd., Suite 101
Beachwood OH 44122
PH: 216-364-0512 | FX: 216-609-3446
Email: tconnick@connicklawllc.com

*Attorneys for Plaintiff*

NAILAH K. BYRD
1200 Ontario
Cleveland, OH 44113

Case# CV20935219



9314 8001 1300 3540 5194 61

TRAVELERS INSURANCE COMPANY
485 LEXINGTON AVE
NEW YORK NY 10017-2630

RECEIVED AM
AUG 0 5 2020
HARTFORD
CORPORATE LITIGATION

**CERTIFIED MAIL**™

United States Postal Service ®



U.S. POSTAGE >> PITNEY BOWES

ZIP 44102 $ 007.05⁰
02 4W
0000367032 JUL. 28. 2020.

/elers NYC Received

AUG - 4 2020